IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

MONAL PATEL,              )
                       )
     Plaintiff,       )
                       )
     v.            )     Civil Action No. 1:20-cv-00427 (RDA/JFA)
                       )
CREDENCE MANAGEMENT   )
SOLUTIONS,            )
                       )
     Defendant.     )

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Defendant Credence Management Solutions's ("Defendant") Motions to Dismiss (Dkt. Nos. 16; 21) and Plaintiff Monal Patel's ("Plaintiff") Motion for Injunctive Relief ("Preliminary Injunction Motion") (Dkt. 8). The Court dispenses with oral argument as it would not aid in the decisional process. Local Civ. R. 7(J). Considering Plaintiff's Second Amended Complaint (Dkt. 19); Defendant's Motions to Dismiss (Dkt. Nos 16; 21); the Memorandums in Support of the Motions to Dismiss (Dkt. Nos. 17; 22); Plaintiff's Opposition to the Motions to Dismiss (Dkt. Nos. 26; 27-1); Defendant's Reply in furtherance of the Motions to Dismiss (Dkt. 28); Plaintiff's Surreply to the Motions to Dismiss (Dkt. 33); Plaintiff's Preliminary Injunction Motion (Dkt. 8); Plaintiff's Memorandum in Support of his Preliminary Injunction Motion (Dkt. 9); Defendant's Opposition to the Preliminary Injunction Motion (Dkt. 20); and Plaintiff's Reply in furtherance of his Preliminary Injunction Motion (Dkt. 24), and for the following reasons, it is hereby ORDERED that the Motions to Dismiss are GRANTED;

IT IS FURTHER ORDERED that the Preliminary Injunction Motion is DENIED; and

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

## I. BACKGROUND

On April 17, 2020, Plaintiff commenced this action by filing a Complaint and moving to proceed in *forma pauperis*. Dkt. 1. The Court considered Plaintiff's Complaint and Motion for Leave to Proceed in *Forma Pauperis* ("IFP Motion"), granted the IFP Motion, and dismissed Plaintiff's Complaint without prejudice. Dkt. 3. In the Order dismissing the action, the Court indicated that should Plaintiff decide to amend his Complaint, he was required to do so on or before July 8, 2020. *Id.*

On July 7, 2020, Plaintiff filed his First Amended Complaint. Dkt. 4. On July 21, 2020, Plaintiff moved for leave to amend his First Amended Complaint by adding a tortious interference claim. Dkt. 7. Two days after moving to file that additional claim, Plaintiff filed a Preliminary Injunction Motion. Dkt. 8. On August 7, 2020, the Court granted Plaintiff leave to file a tortious interference claim. Dkt. 11.

On August 14, 2020, Defendant moved to dismiss Plaintiff's First Amended Complaint (Dkt. 16), and two days thereafter, Plaintiff filed his Second Amended Complaint (Dkt. 19) adding the tortious interference claim to those he asserted in his First Amended Complaint. In response, Defendant moved to dismiss Plaintiff's tortious interference claim. Dkt. 21.

In his Second Amended Complaint, Plaintiff brings claims of employment discrimination; retaliation; libel; violation of whistleblower protection laws; ADA interference; and tortious interference. Dkt. 19, 4, 9, 12-16. Plaintiff has pleaded the following facts in support of these claims. For purposes of considering the Motion, the Court accepts all facts contained within the Complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

In his pleadings, Plaintiff is a self-described homosexual man of Indian descent, and maintains that Defendant, his former employer, discriminated against him by treating him differently than his white co-workers. *Id*. at 5. During the relevant time period, Defendant was a federal government contractor who was working on a contract with the United States Army ("Army"), which concerned the Army's General Fund Enterprise Business System ("GFEBS") program. Dkt. Nos. 19, 3, 4, 6-7; 17, 1. The claims and facts contained within Plaintiff's Second Amended Complaint are largely incomprehensible. However, from what the Court can glean, Plaintiff contends that at some point, Plaintiff sent an email to someone he describes as the "Deputy PM for GFEBS." *Id*. at 6. In that email, Plaintiff indicated than an individual named Jennifer Chang ("Chang") had a "seeming shortcoming of her ability to manage her responsibilities and duties as an Acting Chief for the Business Management Division of PM GFEBS[.]" *Id*. Also, at some point, it seems that Plaintiff refused to sign a "performance counseling memo." *Id*. Plaintiff alleges that after sending the email concerning Chang, and refusing to sign the memo, Defendant "began a campaign to terminate him" and created a "false document on [ ] [Plaintiff's] performance issues in order to get [ ] [Plaintiff] terminated." *Id*. Plaintiff asserts that Defendant did not provide him a "honest and fair attempt to address" his performance issues. *Id*. Further, Plaintiff pleads that Defendant set "unrealistic and unmeasurable" performance goals for Plaintiff and ignored the positive feedback that Plaintiff was given on his work. *Id*. He alleges that he was also "written up as having worked on non[-]relevant items[.]" *Id*. Additionally, he alleges that his "supervisors delayed providing [ ] [him] adequate training" and disregarded the improvements that Plaintiff was making on his work. *Id*. Plaintiff also alleges that unlike his white counterparts, Plaintiff was issued a "gag order," wherein he was "forbidden to speak to a key leadership member of" some "program team." *Id*.

Defendant terminated Plaintiff's employment on January 22, 2020, around 11:15 a.m.  *Id.*; *see also*, Dkt. 19-1, 3.  Later that same day at 9:20 p.m., Plaintiff sent an email to someone Plaintiff describes as Defendant's Chief Executive Officer.  Dkt. 19, 7; *see generally*, Dkt. 19-1.  In that email, Plaintiff indicated that an individual named "Brian" "intimidated" him.  Dkt. 19, 7.  Plaintiff notes that in that email he "used specific words such as 'disparate treatment,' 'inhumane,' and the phrases of a white male hovering over [ ] [Plaintiff], a short Indian male."  *Id.*

The following day, and also on January 26, 2020, Plaintiff sent emails to Defendant's Chief Executive Officer, to Defendant's "leaders," to Defendant's Human Resources Director, and to individuals named "Sid Chowdhary," and "Susie Alexander."  *Id.*

In light of his termination, Plaintiff alleges Defendant retaliated against him for not signing a performance counseling memo and for "calling [ ] [Defendant's] attention [to] the unethical and unfair treatment [ ] [he received], such as [the] gag order[.]"  *Id.*

In addition, Plaintiff alleges that Defendant "malign[ed] his reputation by hampering [Plaintiff's] federal employment prospects."  *Id.*  Plaintiff's position is that Defendant did so when on February 14, 2020, Defendant "plac[ed] an [i]ncident [r]eport in [ ] [Plaintiff's]  . . . Joint Personnel Adjudication System [("JPAS").]"  *Id.*  Plaintiff maintains that by filing the incident report, Defendant deterred "future employers" from hiring Plaintiff for Department of Defense work.  *Id.*  Plaintiff contends that Defendant filed this incident report in an effort to ruin his career.  *Id.* at 7-8.

Plaintiff also pleads that he has "ADD," (the Court believes that this is a reference to Attention-Deficit-Disorder) and contends that Defendant violated his rights under the ADA when it failed to make a reasonable accommodation for Plaintiff by somehow preventing Plaintiff from using a standing desk.  *Id.*  Plaintiff seems to allege Defendant did so when it required Plaintiff to

"go through additional hoops by threatening [ ] [Plaintiff] to get a doctor's note to prove [ ] [Plaintiff's] medical need," and by requiring Plaintiff to "move [ ] [his] own desk and items, [and] set up [ ] [his] own networking[ ] and connections[.]" *Id.*

Also, Plaintiff alleges that Defendant discriminated against him for "not having [ ] [Plaintiff] do a meet and greet" with certain individuals when Plaintiff was hired, as new employees are typically allowed to do. *Id.* at 9.  He pleads that "[s]omehow, [ ] [he] was denied a rite of passage." *Id.*

## II.  STANDARD OF REVIEW

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 561 (internal citations omitted); *see* Fed. R. Civ. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  A complaint is also insufficient if it relies upon "'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim to relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570.  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  Yet, "[c]onclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc. v J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) ("[W]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the

facts . . . . Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *E. Shore Mkts., Inc.*, 213 F.3d at 180; *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). Though generally, "extrinsic evidence should not be considered at the 12(b)(6) stage," the United States Court of Appeals for the Fourth Circuit has opined that "when a defendant attaches a document to its motion to dismiss, 'a court may consider it in determining whether to dismiss the complaint [if] it was integral to and explicitly relied on in the complaint and [if] the plaintiff[] do[es] not challenge its authenticity.'" *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (quoting *Phillips v. LCI Int'l Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)). Further, this Court has recognized that "[a] document is integral to the complaint where it is significantly related to a cause of action, and it is authentic when it is not in dispute by the opposing party." *McGlothian v. Fralin*, No. 3:18-cv-507, 2019 WL 1087156, at *7 (E.D. Va. Jan. 23, 2019) (citations omitted).

"While *pro se* litigants cannot 'be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district courts be required to conjure up and decide issues never fairly presented to them.'" *Richardson v. Bell Partners, Inc.*, No. 1:17-cv-00995, 2018 WL 10418861, at *2 (E.D. Va. Feb. 16, 2018) (quoting *Beaudett v. Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating

6

a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

## III.  ANALYSIS

In his Second Amended Complaint, Plaintiff sets forth six claims for relief—employment discrimination; retaliation; libel; violation of whistleblower protection laws; ADA interference; and tortious interference. Dkt. 19, 4, 9, 12-16. Defendant argues that Plaintiff has failed to plead sufficient facts in support of each of these claims, and as such, the Second Amended Complaint should be dismissed with prejudice. *See generally*, Dkt. Nos. 17; 22. In turn, Plaintiff maintains that Defendant's arguments concerning dismissal are without merit, and that he has stated sufficient facts in support of each of his claims. *See generally*, Dkt. Nos. 26; 33.

Additionally, Plaintiff has requested that this Court enter a preliminary injunction order enjoining Defendant from its ability to "make entries in [the] JPAS [system]" presumably as to entries concerning Plaintiff and requiring Defendant to withdraw the incident report that it filed in JPAS regarding Plaintiff. Dkt. 8, 1, 3. Defendant has opposed Plaintiff's Preliminary Injunction Motion. Dkt. 20.

The Court will address the merits of Defendant's Motions to Dismiss and Plaintiff's Preliminary Injunction Motion in turn. For the reasons that follow, the Court finds that each claim in Plaintiff's Second Amended Complaint must be dismissed, and that Plaintiff's Preliminary Injunction Motion must be denied as moot.

### A.  Defendant's Motions to Dismiss Plaintiff's Second Amended Complaint

As an initial matter, it bears repeating that on June 8, 2020, this Court dismissed Plaintiff's original Complaint, finding that "[a]lthough [P]laintiff purport[ed] to bring his [C]omplaint under Title VII, none of the facts alleged in the [C]omplaint relate[d] to any discrimination based on

[P]laintiff's sexual orientation or national origin." Dkt. 3, 2. Accordingly, Court dismissed this action without prejudice thereby allowing Plaintiff to amend his Complaint. *See generally*, Dkt. 3.

Plaintiff amended his Complaint twice since the Court's June 8, 2020 Order. *See generally*, Dkt. Nos. 4; 19. However, interestingly, the facts which Plaintiff has pleaded in support of his employment discrimination remain largely unchanged from those contained in the original Complaint. *Compare*, Dkt. 1; *with*, Dkt. 19. And still, "none of the facts alleged in the [Second Amended] [C]omplaint relate to any discrimination based on [P]laintiff's sexual orientation or national origin." Dkt. 3, 2. Thus, dismissal remains appropriate as to Defendant's Title VII employment discrimination claim.

In its June 8, 2020 Order, the Court also commented that Plaintiff "allege[d] that he was retaliated against, not for engaging in a protected activity under Title VII, but for complaining about accounting irregularities." *Id*. For that reason, the Court found that Plaintiff's retaliation claim should be dismissed as well. *Id*. Plaintiff has pleaded additional facts in support of his retaliation claim, and has, of course, added the additional claims of libel, violation of whistleblower protection laws, ADA interference, and tortious interference. *See generally*, Dkt. 19. Still, the facts that Plaintiff has pleaded are insufficient to defeat the arguments Defendant presents in support of its Rule 12(b)(6) motion.

   *i. Plaintiff has failed to plead sufficient facts in support of his retaliation claim*

Defendant contends that Plaintiff's retaliation claim should be dismissed because Plaintiff has failed to plead facts that demonstrate that (1) he engaged in protected activity and (2) that there was a causal relationship between the alleged protected activity and any adverse employment action. Dkt. 17, 15-20.

42 U.S.C. § 2000e-3(a) provides that:

[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by [ ] [Title VII], or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII].

42 U.S.C. § 2000e-3(a).  In order to plead a plausible claim for retaliation, a Plaintiff must state sufficient facts to show "(1) that [he] engaged in protected activity; (2) that [his] employer took an adverse employment action against [him]; and (3) that there was a causal link between the two events."  *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015).  Here, the first and second elements are at issue.

Turning to the first element, "[u]nder the applicable legal principles, in the context of a retaliation claim, a 'protected activity' may fall into two categories, opposition and participation." *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 379, 406 (4th Cir. 2005).

"Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII."  *Laughlin v. Metro. Wash. Airports Auth.*, 49 F.3d 253, 259 (4th Cir. 1998) (citing 42 U.S.C. § 2000e-3(a)).   Under a theory of participation, an employer may not take an adverse action against an employee for engaging in protected activity such as "participating in an ongoing investigation or proceeding under Title VII[.]"  *Id.*

However, "[t]o qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim."  *Laughlin*, 149 F.3d at 259 (citation omitted). The United States Court of Appeals for the Fourth Circuit has indicated that "protected oppositional activities may include 'staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,'" as well as making

9

"'complaint[ts] . . . about suspected violations[.]'"   *Navy Fed. Credit Union*, 424 F.3d at 406

(quoting *Laughlin*, 149 F.3d at 259; *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 543-44

(4th Cir. 2003)).

In *Laughlin v. Metro. Wash. Airports Auth.*, the Fourth Circuit described that "the scope of

protection for activity falling under the participation clause is broader than for activity falling under

the opposition clause."   149 F.3d 253, 259 n.4 (4th Cir. 1998) (citing *Booker v. Brown &*

*Williamson Tobacco Co.*, 879 F.2d 1304, 1312 (6th Cir. 1989)).  Indeed, "[a]n employee may not

invoke the protections of the Act by making a vague charge of discrimination.  Otherwise, every

adverse employment decision by an employer would be subject to challenge under either state or

federal civil rights legislation simply by an employee inserting a charge of discrimination."

*Booker*, 879 F.2d at 1313-14.  To be sure, "Title VII is not a general bad acts statute . . . and it does

not prohibit private employers from retaliating against an employee based on [ ][his] opposition to

discriminatory practices that are outside the scope of Title VII."  *Bonds v. Leavitt*, 629 F.3d 369,

384 (4th Cir. 2011).

Here, Plaintiff does not allege that Defendant retaliated against him for "participating in an

ongoing investigation or proceeding under Title VII," *Laughlin*, 149 F.3d at 259 (citing 42 U.S.C.

2000e-3(a)); *see generally*, Dkt. 19.  Therefore, since Plaintiff's "actions are not cognizable as

participation, they must be oppositional or [his] case fails as a matter of law."  *Laughlin*, 149 F.3d

at 259.

Plaintiff attempts to plead a number of instances of opposition activity.  In the first instance,

Plaintiff alleges that Defendant "began a campaign to terminate him," in retaliation for an email

he sent to Chang. Dkt. 19, 6.  Plaintiff describes that in that email concerning Chang, Plaintiff

complained of Chang's "seeming shortcoming of her ability to manage her responsibilities and

10

duties as Acting Chief for the Business Management Division of PM GFEBS," and also voiced concerns regarding "the account GFEBS was using in allowing the collection of reimbursable manpower costs."  *Id.*  Even though opposition activity can include the voicing of informal grievances, those grievances must be as to discriminatory practices within the ambit of those contemplated by Title VII.  *Bonds*, 629 F.3d at 384.  Here, Plaintiff's concerns about how Chang performed her duties and his concerns about the functionality of some accounting system are not protected oppositional activities within the scope of Title VII.

Second, Plaintiff posits that Defendant retaliated against him in violation of Title VII based on Plaintiff's refusal to "sign[ ] [Defendant's] . . . counseling memo."  Dkt. 19, 6.  Plaintiff's refusal to sign the memorandum is not an instance of "utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities."  *Laughlin*, 149 F.3d at 259 (citation omitted).  Accordingly, this particular pleading is also not a protected oppositional activity within the meaning of Title VII.

Third, Plaintiff points to a string of emails that he sent to people he describes as Defendant's Chief Executive Officer, Defendant's "leaders," Defendant's Human Resources Director, an individual named "Sid Chowdhary," and an individual named "Susie Alexander." Dkt. 19, 7.  As a matter of law, these emails cannot be considered the cause of Plaintiff's alleged retaliatory termination.  This is so because Plaintiff sent the emails (the alleged protected activity) *after* he was terminated (the alleged retaliatory conduct).  *See* Dkt. Nos. 19-1, 3; 17-1, 4; *see also Supinger v. Virginia*, 167 F. Supp. 3d 795, 811 (W.D. Va. 2016) (dismissing a claim of Title VII retaliation "[b]ecause the retaliatory conduct occurred before the [defendant] had knowledge of [ ] [the plaintiff's] Title VII protected activities, [the plaintiff] has failed to allege that . . . [adverse

action was taken against him] because he engaged in Title VII protected activity").  Plaintiff has pleaded that he was terminated on January 22, 2020.  Dkt. 19, 7.  The first email that Plaintiff urges constitutes protected activity was one that he sent on January 22, 2020, to someone he describes as Defendant's Chief Executive Officer.  *Id*.  And while the email was sent on the same day that Plaintiff was terminated, it appears that Plaintiff was terminated that day at 11:15 a.m (Dkt. 17-1, 3), but he did not send that email until January 22, 2020, at 9:20 p.m.[1]  Dkt. 17-1, 4.  And the emails that Plaintiff sent on January 23th and 26th of 2020 most certainly occurred after Plaintiff was terminated.  Dkt. 19, 7.  As such, each of these emails cannot be said to be the cause of Plaintiff's alleged retaliatory termination.

Thus, the Court finds that in the aggregate, Plaintiff has failed to state a cause of Title VII retaliation against Defendant.

### ii.  Plaintiff has failed to plead sufficient facts in support of his libel claim

Additionally, in passing, Plaintiff asserts a claim of libel.  *See id*. at 9.  He contends that Defendants are liable for libel in light of the incident report that Defendant filed against Plaintiff's security clearance in the JPAS system.  *Id*.  In Plaintiff's words, Defendant "falsely use[d] the hyperbolic and charged term of insider threats thereby committing libel against [ ] [him], as none of [ ] [Plaintiff's] communications could fit the definition of insider threats, and were in reality

---

[1]  In his Second Amended Complaint, Plaintiff sets forth that on January 22, 2020, he sent an email to Defendant's Chief Executive Officer and that in that email, he "used specific words such as 'disparate treatment[,]' [ ] 'inhumane[,]' [ ] and the phrases of a white male hovering over [ ] [him], a short Indian male."  Dkt. 19, 7.  Defendant has attached to its Motion to Dismiss what it maintains is the email that Plaintiff sent to Defendant's supposed Chief Executive Officer.  *See* Dkt. Nos. 17, 19; 17-1.  Consistent with the standard of review for motions to dismiss (*supra*, p. 5-7), this Court finds that it may consider Defendant's exhibit because it is explicitly referenced in the Second Amended Complaint (*see* Dkt. Nos. 19, 7; 17-1, 4); integral to Plaintiff's Second Amended Complaint as Plaintiff maintains that the email forms the basis for one of his protected activities (*see id*.); and Plaintiff does not contest the authenticity of the exhibit.

(and legally), protected opposition." *Id.* (emphasis omitted).  By filing the incident report, Plaintiff declares that Defendant "ruin[ed] his career" and prevented Plaintiff from obtaining "any future [ ] [Department of Defense] work [that would] require a security clearance."  *Id.*

In response, Defendant argues that it "is absolutely immune from tort liability for making this form of a mandatory report in JPAS."  Dkt. 17, 20 (citation omitted).  Defendant explains that this is so because it has an obligation as a Department of Defense contractor to adhere to the requirements set forth in the Department of Defense's National Industrial Security Program Operating Manual ("NISPOM").  *See id.* at 20-22.

Consistent with authority from the Fourth Circuit and this Court, because Defendant was doing what NISPOM required when it filed the incident report against Plaintiff, Defendant is immune from liability as to Plaintiff's libel claim.  *Id.*  (citing *Becker v. Philco Corp.*, 372 F.2d 771, 773 (4th Cir. 1967); *Ford v. Torres*, No. 1:08-cv-1153, 2009 WL 537563, at *11 (E.D. Va. Mar. 3, 2009); *Stephenson v. Nassif*, 160 F. Supp. 3d 884, 888 (E.D. VA. 2015); NISPOM, DOD 5220.22-M, at §§ 1-202, 1-302).

The NISPOM "imposes certain security obligations on contractors that receive access to classified material[,]" and was "issued by the Secretary of Defense pursuant to presidential executive order."  *Stephenson v. Nassif*, 160 F. Supp. 3d 884, 888 (E.D. Va. 2015) (citing Exec. Order No. 12,829,58 Fed. Reg. 3,479 (Jan. 6, 1993).  Section 1-202 requires contractors to "establish and maintain an insider threat program that will gather, integrate, and report relevant and available information indicative of a potential or actual insider threat, consistent with" the applicable standards.  United States Department of Defense, NISPOM § 1-202 (May 18, 2016), https://www.esd.whs.mil/portals/54/documents/dd/issuances/dodm/522022m.pdf   (last   visited Feb. 10, 2021).  Section 1-302 of the NISPOM also indicates that "[c]ontractors shall report

adverse information coming to their attention concerning any of their cleared employees.  Reports based on rumor or innuendo should not be made.  The subsequent termination of employment of an employee does not obviate the requirement to submit this report." *Id*. at § 1-302.  As this Court has described on a prior occasion, "the plain language of NISPOM § 1-302(a) is mandatory . . . [t]here is no discretion not to report, and a contractor's failure to report something that falls within the broad reach of 'adverse information' is not an exercise of discretion but a breach of the mandatory reporting obligation." *Stephenson*, 160 F. Supp. 3d at 888.

In *Becker v. Philco Corp.*, the Fourth Circuit held that "an action for libel will not lie . . . against a private party fulfilling its governmentally imposed duty to inform."  372 F.2d 771, 776 (4th Cir. 1967).  As this Court has explained on a prior occasion, "[i]n essence, *Becker* held that where a government contractor 'has no discretion and is mandatorily ordered' to report to the government 'each suspected compromise of classified information,' that contractor's reports are absolutely privileged." *Stephenson*, 160 F. Supp. 3d at 890 (quoting *Becker*, 372 F.2d at 773-74)). Indeed, this Court has applied *Becker* to circumstances where a contractor submitted a mandatory report under NISPOM § 1-302.  *See e.g.*, *Stephenson*, 160 F. Supp. 3d at 890; *Ford*, 2009 WL 537563, at *12 (granting defendant contractor's motion to dismiss defamation claim where it "had an obligation to report damaging information about" the plaintiff once it received that information and therefore, consistent with *Becker*, the defendant contractor was "immune from defamation claims based on a report it was required to file" under NISPOM § 1-302).

Construing Plaintiff's Second Amended Complaint liberally, it appears that Defendant is a federal contractor that works with the United States Department of Defense, and more specifically, the Army.  *See* Dkt. 17, 6, 8, 9.  Given its status as a defense contractor, Defendant had an obligation to adhere to the requirements of the NISPOM, including the responsibility to "report

adverse information coming to their attention concerning any of their cleared employees[,]" United States Department of Defense, NISPOM § 1-202 (May 18, 2016), https://www.esd.whs.mil/portals/54/documents/dd/issuances/dodm/522022m.pdf (last visited Feb. 10, 2021). *See Stephenson*, 160 F. Supp. 3d at 890; *Ford*, 2009 WL 537563, at *12. In light of this requirement, Plaintiff's claim "for libel will not lie" against Defendant, "a private party fulfilling its governmentally imposed duty to inform." *Becker*, 372 F.2d at 776. Accordingly, Plaintiff's libel claim must be dismissed.

### iii. *Plaintiff has failed to plead sufficient facts in support of his claim of violation of whistleblower protection laws*

Further, Plaintiff alleges that Defendant has violated 10 U.S.C. § 2409 and 41 U.S.C. § 4712. Dkt. 19, 9. Plaintiff maintains that Defendant's "retaliation directly relates to [ ] [his] whistleblower disclosures on the violation of [ ] [his] civil liberties by the gag order on free speech [ ] [that he was] required to accept." *Id*. It seems that the alleged retaliatory action that Plaintiff is referring to is the incident report that Defendant filed against Plaintiff in JPAS. *Id*. And the "gag order" that Plaintiff seems to be referencing appears to be some requirement that Plaintiff refrain from speaking with some "key leadership member of" some "program team." *Id* at 6, 9. Nevertheless, Plaintiff has failed to state a claim under 10 U.S.C. § 2409(a)(1) and 41 U.S.C. § 4712.

10 U.S.C. § 2409 provides that:

[a]n employee of a contractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body described in paragraph (2) information that the employee reasonably believes is evidence of the following: (A) Gross mismanagement of a Department of Defense contract or grant, a gross waste of Department funds, an abuse of authority relating to a Department contract or grant, or a violation of law, rule, or regulation related to a Department contract (including the competition for or negotiation of a contract) or grant. (B) Gross mismanagement of a National Aeronautics and Space Administration contract or grant, a gross waste of Administration funds, an abuse of authority

relating to an Administration contract or grant, or a violation of law, rule, or regulation related to an Administration contract (including the competition for or negotiation of a contract) or grant. (C) A substantial and specific danger to public health or safety.

10 U.S.C. § 2409(a). 41 U.S.C. § 4712 similarly indicates that:

[a]n employee of a contractor . . . may not be discharged, demoted, or otherwise discriminated against as a reprisal for disclosing to a person or body [as defined by the statute] . . . information that the employee reasonably believes is evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal funds, an abuse of authority relating to a Federal contract or grant, a substantial and specific danger to public health or safety, or a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant.

412 U.S.C. § 4712(a)(1). As this Court has previously described, both 10 U.S.C. § 2409 and 41

U.S.C. § 4712:

aim to protect employees of federal contractors from retaliation by their employers when those employees have made disclosures of certain statutorily-defined information. The principal difference between the two statutes is the range of government contracts covered: § 2409 applies only with respect to Department of Defense ("DoD") or National Aeronautics and Space Administration ("NASA") contracts, whereas § 4712 applies with respect to all federal contracts.

*Ficarra v. SourceAmerica*, No. 1:19-cv-01025, 2020 WL 1606396, at *3 (E.D. Va. Apr. 1, 2020).

Thus, to state a plausible claim of unlawful retaliation under 10 U.S.C. § 2409, Plaintiff must plead facts that establish the following elements: "(1) he engaged in 'protected activity'; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity." *United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610, 621 (E.D. Va. Sept. 14, 2016), *aff'd*, 746 F. App'x 166 (4th Cir. 2018), *cert. denied*, 139 S. Ct. 1304 (Mar. 4, 2019). And to plead a plausible claim of unlawful retaliation under 41 U.S.C. § 4712, Plaintiff must plead facts that demonstrate that (1) he "reasonably believe[d] he was disclosing evidence" described by the statute; (2) he made the protected disclosure to a person described by the statute; and (3) "the protected disclosure

was a 'contributing factor' to an adverse personnel action." *Prichard v. Metro. Wash. Airports Auth.*, No. 1:18-cv-1432, 2019 WL 5698660, at * 12 (E.D. Va. Nov. 4, 2019) (quoting 41 U.S.C. § 4712).

Here, Plaintiff has simply failed to plead facts that show that he engaged in protected activity or made a protected disclosure under 10 U.S.C. § 2409 and 41 U.S.C. § 4712.  Plaintiff seems to allege that his complaints about what he describes as a "gag order," constitutes protected activity under 10 U.S.C. § 2409 and 41 U.S.C. § 4712. Dkt. 19, 9.  However, based on the facts pleaded in the Second Amended Complaint, the Court finds that Plaintiff could not have reasonably believed that his complaints would fit within either statutory definition of protected activity or disclosure as his complaint about an inability to speak with some "key leadership member of the program team" did not appear to concern a Department of Defense or other Federal contract.

Construing Plaintiff's Second Amended Complaint liberally in light of Plaintiff's *pro se* status, it is conceivable that he intended that his complaints about Chang to demonstrate protected activity or disclosure under 10 U.S.C. § 2409 and 41 U.S.C. § 4712.  Indeed, Plaintiff pleads that Defendant retaliated against him for his complaints that Chang had a "seeming shortcoming of her ability to manage her responsibilities and duties[,]" and that "there may [have] be[en] a possible issue with the account" that was being used to "collect[ ] reimbursable manpower costs[.]"  Dkt. 19, 6.  While these alleged complaints are closer to the protected activity contemplated by the statutes than Plaintiff's complaints about a "gag order," these complaints are nevertheless deficient.  This is so because a "seeming shortcoming" and a "possible issue" falls short of the "*gross* mismanagement," "*gross* waste," and "s*ubstantial and specific* danger to public health or safety," described by the statutes.  *See* 10 U.S.C. § 2409 and 41 U.S.C. § 4712 (emphasis added).

17

Moreover, Plaintiff has not identified in his Second Amended Complaint any waste of Army or Federal funds or any law, rule, or regulation that applies to Defense or other federal contracts that Defendant violated. *See generally*, Dkt. 19. He also has not pleaded facts that show that Defendant abused its authority in regard to a Federal contract. *Id*. Accordingly, Plaintiff's whistleblower claims under 10 U.S.C. § 2409 and 41 U.S.C. § 4712 must be dismissed.

    *iv.  Plaintiff has failed to plead sufficient facts in support of his claim of ADA interference*

        In addition, Plaintiff pleads that Defendant is liable for ADA interference. Dkt. 19, 9. In support of this claim, Plaintiff urges that Defendant denied and required Plaintiff to forgo an accommodation "that was already grant[ed] to [ ] [him]." *Id*. Seemingly, that accommodation was a standing desk that was provided to Plaintiff by his former employer—not Defendant. *Id*. It appears that Plaintiff takes the position that Defendant acted unlawfully by requiring Plaintiff to furnish a doctor's note before it would provide Plaintiff with a standing desk. *Id*. Interestingly, Plaintiff also pleads that his disability is "ADD," which this Court understands is attention deficit disorder. *Id*. at 5.

        42 U.S.C. § 12203(b) provides that:

> [i]t shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA] [ ].

42 U.S.C. § 12203(b). Thus, to plead a claim of ADA interference, a plaintiff must set forth sufficient facts that demonstrate that:

> (1) [ ]he engaged in activity statutorily protected by the ADA; (2) [ ]he was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of h[is] [ ] protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Kelly v. Abdington*, No. 1:19-cv-00032, 2020 WL 2553614, at * 7 (W.D. Va. May 20, 2020) (quoting *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550-51 (7th Cir. 2017)).

Under the ADA, statutorily protected activity may include "formal complaints of discrimination[,]" or "a request for an accommodation[.]" *See Kelly*, 2020 WL 2553614 at * 7 (citations omitted). However, where the protected activity is a request for an accommodation, that accommodation must be connected to the disability. *Garrett v. Cape Fox Facilities Servs.*, No. 1:19-cv-00579, 2020 WL 265869, * 9 (E.D. Va. Jan. 17, 2020) (dismissing claim for failure to accommodate under the ADA where "plaintiff's request," to be "transferred to 'a building where toxins would not affect [her]'" "on its face, appear[ed] unconnected [to] her disability" of PTSD) (quoting complaint). Indeed, "[a]n accommodation request must be sufficiently direct and specific, and it must explain how the accommodation is linked to the plaintiff's disability." *Jones v. Nationwide Life Ins. Co.*, 696 F.3d 78, 89 (1st Cir. 2012) (citation omitted).

Here, based on the face of the Second Amended Complaint, it is unclear how failure to provide Plaintiff with a standing desk is directly and specifically related to Plaintiff's alleged attention deficient disorder. *See generally*, Dkt. 19.

Moreover, Plaintiff has not stated with sufficiently particularity how Defendant caused Plaintiff to "deny" or forgo" his standing desk in a manner that would demonstrate that Plaintiff was "coerced, threatened, intimidated, or interfered on account of" his request for a standing desk. *See generally*, *id*.

And to the extent that it is Plaintiff's position that Defendant violated the ADA by requiring Plaintiff to provide a doctor's note, the Court finds that such a requirement is permitted under the ADA. *See Williamson v. Bon Secours Richmond Health Sys., Inc.*, 34 F. Supp. 3d 607, 613 (E.D. Va. 2014) (finding that it was not unlawful for that defendant to require plaintiff to provide a

doctor's note concerning his accommodation and that the "ADA encourages such action," and "courts applaud" the same).

Accordingly, the Court finds that Defendant has failed to state a claim for ADA interference.

### v. Plaintiff has failed to plead sufficient facts in support of his claim of tortious interference

Finally, Plaintiff pleads that Defendant committed tortious interference with employment by filing an incident report against Plaintiff in JPAS. Dkt. 19, 12-16.

Defendant contends that Plaintiff has failed to state a claim for tortious interference because Plaintiff has not pleaded facts that demonstrate that Defendant knew of any specific employment relationship that Plaintiff may have had with a third party, nor has Plaintiff pleaded that Defendant used improper methods to interfere with Plaintiff's employment prospects. Dkt. 22, 5-13.

In Virginia, to assert a claim of tortious interference with employment, a plaintiff must plead sufficient facts that establish:

> (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

*Phoenix Renovation Corp. v. Rodriguez*, 461 F. Supp. 2d 411, 427 (E.D. Va. 2006), *aff'd* 258 Fed. App'x 546 (4th Cir. 2017) (quoting *Chaves v. Johnson*, 230 Va. 112, 335 (Va. 1985)). Also, where "a contract is terminable at will," such as the employment contract at issue in the case at bar, "a plaintiff must allege and prove not only an intentional interference . . . but also that the defendant employed improper methods." *Bonanno v. Cooper*, No. 1:14-cv-1605, 2015 WL 11111894, at * 5 (E.D. Va. June 4, 2015).

Simply put, here, Plaintiff has not pleaded sufficient facts to demonstrate that Defendant had knowledge of a contractual relationship or employment expectancy when, on February 14, 2020, it filed an incident report against Plaintiff in JPAS. *See generally*, Dkt. 19. Indeed, Plaintiff pleads that he is "not certain" Defendant knew about Plaintiff's potential employment with another Department of Defense contractor. *Id.* at 14. Still, Plaintiff contends that while Defendant may not have known who the specific potential employer might have been, Plaintiff surmises that Defendant knew that the incident report would prevent Plaintiff from obtaining work with other Department of Defense contractors. *Id.* Yet, this is insufficient because Defendant must have been aware of "*specific* contracts or . . . [employment] expectancies" that Plaintiff might have had. *See Lokhova*, 441 F. Supp. 3d 238, 265 (E.D. Va. 2020).

Moreover, Plaintiff has failed to plead facts that establish that Defendant deployed improper methods in filing the incident report against Plaintiff. This is true particularly where, as here, Defendant was *required* to report adverse information concerning Plaintiff in accordance with § 1-302 of the NISPOM (*supra*, p. 13-15). Accordingly, the Court finds that Plaintiff has failed to plead sufficient facts in support of his tortious interference claim.

## B. Plaintiff's Preliminary Injunction Motion

"A preliminary injunction [or TRO] is 'an extraordinary remedy that may only be awarded upon a clear showing that the [the petitioner] is entitled to relief' and may never be awarded 'as of right.'" *Mountain Valley Pipeline, LLC v. W. Pocahontas Prop. LP*., 918 F.3d 353, 366 (4th Cir. 2019) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22, 24 (2008)). For a litigant to demonstrate that he deserves such relief, he "must establish that: (1) [he] is likely to succeed on the merits; (2) [he] is likely to suffer irreparable harm without the preliminary injunction [or TRO]; (3) the balance of the equities tips in its favor; and (4) the injunction [or TRO] is in the public

interest." *Winter*, 555 U.S. at 20. "The failure to show any one of the relevant factors mandates denial of the preliminary injunction [or TRO]." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 491 (E.D. Va. 2016) (citation omitted).

For the reasons set forth above (*supra*, p. 7-21), Plaintiff has failed to demonstrate that he is likely to succeed on the merits of any of his claims. Accordingly, Plaintiff's Preliminary Injunction Motion must be denied.

## IV.   CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Defendant's Motions to Dismiss (Dkt. Nos. 16; 21) are GRANTED;

IT IS FURTHER ORDERED that the Preliminary Injunction Motion (Dkt. 8) is DENIED; and

IT IS FURTHER ORDERED that this action is DISMISSED with prejudice.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Order. A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal. Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to Plaintiff, *pro se*, and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
March 15, 2021

/s/

Rossie D. Alston, Jr.
United States District Judge