IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| MONAL PATEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-00427 (RDA/JFA) |
| | ) | |
| CREDENCE MANAGEMENT | ) | |
| SOLUTIONS, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This matter comes before the Court on Plaintiff Monal Patel's Motion for Reconsideration of Dismissal (Dkt. 52). Having considered Plaintiff's Motion and Defendant Credence Management Solutions' Brief in Opposition (Dkt. 54), it is hereby ORDERED that Plaintiff's Motion for Reconsideration (Dkt. 52) is DENIED.

## I.  BACKGROUND

Defendant Credence Management Solutions ("Credence") is a federal government contractor performing work on a contract with the United States Army for the Army's General Fund Enterprise Business System ("GFEBS"). Dkt. 4. Plaintiff, a self-described gay man of Indian descent, is a former at-will employee of Credence. Dkt. 19 at 4. Plaintiff had a secret-level federal security clearance and worked on Credence's Army contract. Dkt. Nos. 4; 9.

While the allegations in Plaintiff's Second Amended Complaint are largely incomprehensible, Plaintiff appears to contend that he sent an e-mail to someone he describes as the "Deputy PM for GFEBS" stating that an individual named Jennifer Chang had a "seeming shortcoming of her ability to manage her responsibilities and duties as an Acting Chief for the Business Management Division of PM GFEBS." Dkt. 19 at 6. Plaintiff alleges that after he sent

that email, Defendant "began a campaign to terminate him" by creating a "false document on [ ] [Plaintiff's] performance issues." *Id.*

Plaintiff was employed by Credence for twenty-seven days before being terminated due to several documented work performance deficiencies. Dkt. 4. Following Plaintiff's termination, he exhibited erratic and threatening behavior toward Credence, its employees, and its subcontractors. *See* Dkt. 20-1, Ex. A "Incident Report" at 1-3 (describing Plaintiff's post-employment conduct that led Credence to conclude that he was exhibiting insider threat behavior). Defendant construed Plaintiff's behavior as triggering its obligation as a federal defense contractor to report Plaintiff as a potential security risk, so Defendant submitted an Incident Report on February 14, 2020 to the U.S. Department of Defense's ("DoD") Joint Personnel Adjudication System ("JPAS"). Dkt. 19 at 6.

On April 17, 2020, Plaintiff filed his initial Complaint, which he later amended on July 7, 2020 and again on August 16, 2020. Dkt. Nos. 1; 3; 4; 7. In his Second Amended Complaint, Plaintiff brought claims of discrimination and retaliation under Title VII, libel, violation of whistleblower protection laws, Americans with Disabilities Act interference, and tortious interference. Dkt. 19. On March 15, 2021, following a full briefing, the Court granted Defendant's Motion to Dismiss Plaintiff's Second Amended Complaint in its entirety and with prejudice. Dkt. 51.

On March 24, 2021, Plaintiff filed the instant Motion, seeking the Court's reconsideration of its Order dismissing his Second Amended Complaint. *See generally* Dkt. 52. Construing Plaintiff's Motion liberally, *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020), Plaintiff

appears to request reconsideration only of his Title VII retaliation claim, whistleblower retaliation claim, tortious interference claim, and libel claim.[1]  Dkt. 52.

## II.  STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 59(e), a party may move "to alter or amend a judgment . . . no later than 28 days after the entry of the judgment."  Fed. R. Civ. P. 59(e).  The Court has the "sole discretion" to determine whether to grant a motion for reconsideration.  *United States v. Dickerson*, 971 F. Supp. 1023, 1024 (E.D. Va. 1997).  However, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly."  *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998) (citation and internal quotation marks omitted).   The Fourth Circuit has recognized relief under Rule 59(e) in limited circumstances: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice."  *Id.*  (citations omitted).

Importantly, a Rule 59(e) motion does not permit any party to "relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Sloan v. Childress*, No. 3:18-cv-260, 2020 WL 2501442, at *3 (E.D. Va. May 14, 2020), *aff'd* 827 F. App'x 348 (4th Cir. 2020) (citations omitted).  "[I]f a party relies on newly discovered evidence in its Rule 59(e) motion, the party must produce a legitimate justification for not presenting the evidence during the earlier proceeding."  *Pac. Ins. Co.*, 148 F.3d at 403 (citations and internal quotation marks omitted).  "While pro se litigants cannot 'be expected to frame legal issues with the clarity and precision ideally evident in the work of those trained in law, neither can district

---

[1] Plaintiff's Motion appears to incorrectly cite to Federal Rule of Civil Procedure 54(b). Given Plaintiff's status as a *pro* se litigant, however, the Court reviews the Motion under the relevant Rule 59(e) standard.

courts be required to conjure up and decide issues never fairly presented to them.'" *Richardson v. Bell Partners, Inc.*, No. 1:17-cv00995, 2018 WL 10418861, at *2 (E.D. Va. Feb. 16, 2018) (quoting *Beaudett v. Hampton*, 775 F.2d 1274, 1276 (4th Cir. 1985)).

## III.   ANALYSIS

On a motion to reconsider, a plaintiff must establish that the Court needs "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Inc. Co.*, 148 F.3d at 403 (citations omitted).  In this case, the Court concludes that Plaintiff fails to establish any of these conditions.

At the outset, Plaintiff fails to identify changes in the controlling laws; rather, Plaintiff simply argues that the Court incorrectly applied established controlling law when the Court dismissed his employment discrimination, retaliation, libel, violation of whistleblower protection laws, ADA interference, and tortious interference claims.  Nor does Plaintiff present any "new evidence" for the Court's consideration.  While Plaintiff asserts the Army conceded, in separate litigation, that Defendant committed "procedural error" by filing the Incident Report in JPAS concerning Plaintiff's post-termination behavior, the Court already correctly concluded that Defendant's filing was not improper because regulations required Credence, as a federal defense contractor, to report security-related concerns.  32 C.F.R. § 117.8(c)(1)(i)); *accord* United States Department of Defense, National Industrial Security Program Operating Manual ("NISPOM"), § 1-302 ("Contractors shall report adverse information coming to their attention concerning any of their cleared employees . . . The subsequent termination of employment of an employee does not obviate the requirement to submit this report."); *see also Patel v. Dep't of Army*, No. 1:20-cv-1016, 2021 WL 1656845 at *1 (E.D. Va. Apr. 14, 2021) ("Decisions relating to the grant or revocation

4

of security clearances are squarely within the [Department of Defense] and [the] Army's discretion.").

Plaintiff also cites a non-binding case from a different jurisdiction for the proposition that "[t]here is no mandate on former employers to report adverse info[rmation] using IRs in JPAS on former cleared employees."  Dkt. 52 at 4 (citing *Press v. United States*, No. 1:17-cv-1667-JKB, 2018 WL 2237492, at *2 (D. Md. May, 16, 2018)).  However, *Press* is easily distinguishable.

In *Press*, a former employee sued his former employer, a federal contractor, in state court. *Press*, 2018 WL 2237492, at *1.  The state court litigation ended, and the former employer published an incident report in JPAS making allegations about the former employee's supposed mishandling of sensitive data.  *Id.* at *2.  Four years later, the former employer posted an addendum to the incident report on JPAS discussing the prior legal action and attributing significant damages to the employee's conduct.  *Id.*  The former employee sued in federal court and the former employer claimed it was immune from liability arising out of its JPAS filing.  *Id.* at *2, 6.  While the Maryland District Court dismissed the claim relating to the initial JPAS filing as time-barred, the court believed that the addendum did not "implicate [the employee's] ability to use or handle sensitive information" and thus it was not a required filing.  *Id.* at *7.  Under the specific facts of *Press*, then, the employer was not entitled to immunity.  *Id.*

*Press* does not benefit Plaintiff's argument, even assuming it were binding on this Court. Indeed, the Maryland District Court acknowledged that "communications that are *required of* and made by a defense contractor to an agency of the United States are privileged."  *Id.* (emphasis in original).  Furthermore, *Press* acknowledged that "[c]ontractors are to report adverse information that is presented to them."  *Id.* at *7.  Here, because Defendant was required to report Plaintiff's threatening behavior creating security-related concerns, *Press*'s rationale that a defense contractor

5

may not enjoy immunity for filing a report that does not relate to its obligations to report security concerns is inapplicable.

### A. The Court Properly Dismissed Plaintiff's Title VII Retaliation Claim

The gravamen of Plaintiff's Motion appears to be that the Court committed a "clear error of law" by dismissing his claims for Title VII retaliation, whistleblower retaliation, tortious interference, and libel. For the following reasons, however, the Court concludes that its prior decision dismissing Plaintiff's claims was correct.

To plead a plausible claim of retaliation under Title VII, Plaintiff was required to allege that he: (1) engaged in statutorily protected activity under Title VII; (2) that Defendant took an adverse action against him; and (3) that there was a causal relationship between the alleged protected activity and adverse action. *Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015). Plaintiff failed to allege that he engaged in any statutorily protected activity under Title VII or that he was subjected to a related adverse employment action by Defendant as a result. As the Court previously held, Plaintiff's allegations of discrimination are simply vague and conclusory, relying nearly exclusively on an e-mail that he wrote, containing phrases such as "disparate treatment" and stating that there was a "white male hovering over me, a short Indian male." Dkt. 19 at 7. The Court again concludes that such conclusory allegations were simply insufficient to survive Defendant's motion to dismiss.

Plaintiff also contends that the "retaliatory event" was Defendant's filing of the incident report and that the "adverse action" was his subsequent termination from his *new* employer. Dkt. 52 at 3 (emphasis added). However, the Court again concludes that Defendant's filing of the Incident Report in JPAS cannot constitute an adverse employment action because the Incident Report was filed pursuant to Defendant's mandatory reporting obligation, as previously explained.

32 C.F.R. § 117.8 (c)(ii) (explaining that a contractor is not liable when they submit a report to the CSA and the communication is required); *Becker v. Philco Corp.*, 372 F.2d 771, 773-74 (4th Cir. 1967) ("[W]here a government contractor 'has no discretion and is mandatorily ordered' to report to the government 'each suspected compromise of classified information,' that contractor's reports are absolutely privileged.") (citation omitted). Accordingly, the Court concludes that it committed no "clear error of law" by dismissing Plaintiff's Title VII retaliation claim.

### B. The Court Properly Dismissed Plaintiff's Tortious Interference Claim

The Court previously found that Plaintiff failed to plead sufficient facts to establish the requisite elements of tortious interference because Plaintiff did not demonstrate (1) "that Defendant had knowledge of a contractual relationship or employment expectancy" when they filed "an incident report against Plaintiff in JPAS;" and (2) "that Defendant deployed improper methods in filing the [I]ncident [R]eport against Plaintiff." Dkt. 51 at 21.

In his Motion, Plaintiff appears to allege he was a party to an enforceable non-disclosure agreement ("NDA") with Defendant, and thus that he was not required to establish that Defendant used improper methods when filing the report. *See* Dkt. 52 at 3. However, in Virginia, it is axiomatic that "[a] person cannot intentionally interfere with his own contract." *Francis Hosp., Inc. v. Read Props., LLC*, 820 S.E.2d 607, 610 (Va. 2018) (quoting *Fox v. Deese*, 362 S.E.2d 699, 708 (Va. 1987)). Plaintiff has provided nothing to suggest that the Court wrongful concluded that he did not plausibly allege a tortious interference claim, and the Court is unaware of any controlling law suggesting that it erred. Accordingly, the Court concludes that its prior dismissal of Plaintiff's tortious interference claim was correct.

### C. The Court Properly Dismissed Plaintiff's Libel Claim

The Court previously concluded that Plaintiff failed to state a claim for libel because, again, Defendant filed the Incident Report in JPAS pursuant to Defendant's mandatory reporting obligations as a federal defense contractor.  Dkt. 51 at 12-15.

In his Motion, Plaintiff contends the Incident Report concerned an "internal labor dispute" between the parties, but Defendant had a mandatory obligation to report security-related concerns about Plaintiff, even after Plaintiff's employment terminated.  NISPOM § 1-302 (May 18, 2016); 32 C.F.R. § 117.8(c)(1)(i).  For the reasons previously stated, Defendant had an obligation to report security-related concerns about Plaintiff.  The Court accordingly finds that it correctly concluded Defendant is immune from liability as to Plaintiff's libel claim.  Dkt. 51 at 12-15; *Becker*, 372 F.2d at 773-74.  In any event, the government has already determined that Defendant's Incident Report regarding Plaintiff's behavior was proper.  *See Patel*, 2021 WL 1656845 at *1.  Plaintiff's Motion therefore fails to identify any "clear error of law" committed by the Court in its dismissal of Plaintiff's libel claim.

### D. The Court Properly Dismissed Plaintiff's Whistleblower Retaliation Claim

The Court previously concluded that Plaintiff failed to state a retaliation claim under 10 U.S.C. § 2409 and 41 U.S.C. § 4712 because Plaintiff "failed to plead facts that show that he engaged in protected activity or made a protected disclosure" was proper.  Dkt. 51 at 17.

To state a plausible claim of unlawful retaliation under 10 U.S.C. § 2409, Plaintiff must plead that: (1) he engaged in protected activity; (2) his employer knew or was reasonably on notice that he was engaged in protected activity; and (3) his employer took adverse action against him as a result of his protected activity.  *United States ex rel. Cody v. Mantech Int'l Corp.*, 207 F. Supp. 3d 610, 621 (E.D. Va. 2016), *aff'd* 746 F. App'x 166 (4th Cir. 2018).  And to plead a plausible

claim of unlawful retaliation under 41 U.S.C. § 4712, Plaintiff must plead sufficient facts alleging that (1) he "reasonably believe[d] he was disclosing evidence" described by the statute; (2) he made the protected disclosure to a person described by the statute; and (3) "the protected disclosure was a 'contributing factor' to an adverse personnel action." *Prichard v. Metro. Wash. Airports Auth.*, No. 1:18-cv-1432, 2019 WL 5698660, at * 12 (E.D. Va. Nov. 4, 2019) (quoting 41 U.S.C. § 4712)).

Plaintiff appears to allege that his complaints about what he describes as a "gag order" constitute protected activity under 10 U.S.C. § 2409 and 41 U.S.C. § 4712, but he fails to plead sufficient facts to show that he engaged in protected activity or made a protected disclosure under 10 U.S.C. § 2409 and 41 U.S.C. § 4712.

While Plaintiff's Motion does appear to identify, for the first time, the individual to whom Defendant allegedly prevented him from speaking, Plaintiff could not have reasonably believed that his complaints would fit within either statutory definition of protected activity or disclosure. Dkt. 52 at 2-3.  Additionally, Plaintiff was aware of this information prior to the Court's entry of final judgment but made no mention of the argument.  *See Pac. Ins. Co.*, 148 F.3d at 403 ("Rule 59(e) motions may not be used [] to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance.").  Accordingly, Plaintiff cannot establish that the Court committed clear error by dismissing his whistleblower retaliation claim.

## IV.  CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Plaintiff's Motion for Reconsideration (Dkt. 52) is DENIED.

To appeal this decision, Plaintiff must file a written notice of appeal with the Clerk of Court within 30 days of the date of entry of this Memorandum Opinion and Order.  A notice of appeal is a short statement indicating a desire to appeal, including the date of the order Plaintiff wants to appeal.  Plaintiff need not explain the grounds for appeal until so directed by the court of appeals. Failure to file a timely notice of appeal waives Plaintiff's right to appeal this decision.

The Clerk is directed to forward copies of this Memorandum Opinion and Order to Plaintiff and close this civil action.

It is SO ORDERED.

Alexandria, Virginia
November 22, 2021

_____ /s/ _____
Rossie D. Alston, Jr.
United States District Judge